UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAMIE SHELLEY and RHIANNON )
SHELLEY, individually and on behalf of )
all others similarly situated, )
         Plaintiffs, )
 )
   *vs.* )    1:13-cv-506-RLY-DKL
 )
OCWEN LOAN SERVICING, LLC, )
       Defendant. )

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, Jamie Shelley and Rhiannon Shelley, filed this proposed class action

under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.,

alleging that Defendant, Ocwen Loan Servicing, LLC, sent them a form letter which

violated various provisions of the FDCPA.  Ocwen moves to dismiss all claims pursuant

to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the court

**GRANTS** the motion.

## I.    Background

In 2011, Plaintiffs faced financial hardship and were forced to surrender their

home to their mortgage lender, CitiMortgage.  (Compl. ¶ 7).  On October 14, 2011,

Plaintiffs filed a Chapter 13 bankruptcy petition.  (*Id*.).  In Schedule D of this petition,

Plaintiffs listed a debt allegedly owed to GMAC Mortgage for the second mortgage on

their former home.  (*Id*.).  On October 19, 2011, GMAC filed an appearance in Plaintiffs'

bankruptcy proceeding.  (*Id*. at ¶ 8).  Additionally, the bankruptcy court sent GMAC

notice of the bankruptcy via U.S. Mail.  (*Id*. at ¶ 9).

1

During Plaintiffs' bankruptcy, Ocwen obtained from GMAC the right to collect upon Plaintiffs' loan.  (*Id*. at ¶ 10).  Ocwen neither filed an appearance in Plaintiffs' bankruptcy case nor received any notices from the bankruptcy court regarding Plaintiffs' case.

On February 7, 2013, Ocwen sent Plaintiffs a letter ("Letter") which, among other things, alerted them that the servicing of their loan would be transferred to Ocwen. (Compl., Ex. F).  In particular, the Letter stated:

> The servicing of your mortgage loan, that is, the right to collect payments from you, is transferring from your current servicer, GMAC Mortgage ("GMACM") to your new servicer, Ocwen Loan Servicing, LLC ("Ocwen") effective February 16, 2013.

The Letter further explained when and how this transition would occur:

> GMACM will stop accepting payments on February 15, 2013.  Ocwen will begin to accept payments on February 16, 2013.  Send all payments due on or after that date to Ocwen.  A temporary coupon is provided below for your convenience.  Any account notices prepared prior to February 16, 2013 will reflect GMACM; all notices prepared on or after February 16, 2013 will reflect Ocwen.

In addition, the Letter provided contact information for reaching and paying Ocwen, while also listing the Transfer Date, Principal Balance, Loan Rate, and the due date for the next payment.  Specifically, the Letter included the heading "Next Payment Due" in a column next to the body of the Letter and the title "Due Date" in the temporary payment coupon; for these categories, each listed August 28, 2011 – a date almost seventeen months prior to the Letter.  The amount due, however, was not included in the body of the Letter or anywhere else.  In fact, the column next to the body of the Letter referenced "Payment Amount" but stated "Please refer to your mortgage account statement."

2

Similarly, below "Mortgage Payment" in the payment coupon, it read "See above."  The

text of the Letter neither demanded Plaintiffs make a payment nor referenced Plaintiffs

being delinquent in their payments.

The second page of the Letter listed various notices and disclosures.  First, it noted

consumer rights the borrower is entitled to under the Real Estate Settlement Procedures

Act ("RESPA").  Additionally, the Letter provided the following notices:

> **Notice Regarding Debt Collection:** This is an attempt to collect a
> debt and any information obtained will be used for that purpose,
> provided if you have an active bankruptcy case or have received a
> discharge, the following Notice Regarding Bankruptcy applies.

> **Notice Regarding Bankruptcy:** If you are a debtor in an active
> bankruptcy case, this letter is not an attempt to collect either a pre-
> petition, post-petition, or discharged debt, and no action will be
> taken in willful violation of the Automatic Stay that may be in effect
> in your bankruptcy case. . . .

On March 26, 2013, Plaintiffs filed this class action complaint alleging the

following violations of the FDCPA: (1) failing to send a follow-up debt validation notice

within five days of the Letter, as required by 15 U.S.C. § 1692g(a); (2) communicating

with Plaintiffs after allegedly being alerted that they refused to pay the debt, in violation

of 15 U.S.C. § 1692c(c); (3) communicating with consumers who were represented by

counsel, in violation of 15 U.S.C. § 1692c(a)(2); and (4) attempting to collect a debt no

longer due, in violation of 15 U.S.C. 1692e.  (Compl. ¶¶ 14-30) (counts I-IV,

respectively).  Ocwen now moves to dismiss all claims.

## II.     Standard

Federal Rule of Civil Procedure 12(b)(6) permits the district court to dismiss a complaint for failure to state a claim for which relief can be granted.  The purpose of the motion is to test the legal sufficiency of the complaint, not to resolve the case on the merits.  *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  In deciding this motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor."  *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its judicial experience and common sense.  *Id*. at 679.

A complaint need only provide "a short and plain statement of the claim" showing that the plaintiff is entitled to relief and be sufficient to provide the defendant with fair notice of the claim and its basis.  *Tamayo*, 526 F.3d at 1081.  Although "detailed factual allegations" are not required, the plaintiff must allege facts that raise the possibility of relief above the "speculative level."  *Twombly,* 550 U.S. at 555; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details

about the subject-matter of the case to present a story that holds together."). As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### III.    Discussion

#### A. The FDCPA

The purpose of FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692. Among other things, the FDCPA requires a written validation of debts, *id*. § 1692g; restricts when a collector may communicate with a consumer, *id*. § 1692c; and bans the use of false, misleading, unfair, or unconscionable means of collecting a debt, *id*. §§ 1692e, 1692f.

##### 1.   "In Connection with the Collection of Any Debt"

For most restrictions under the FDCPA to apply (including those in counts I, III, and IV), two threshold criteria must be met. First, the defendant must qualify as a "debt collector." *Id*. § 1692a(6). Here, the parties do not dispute that Ocwen is a "debt collector" under the statute. Second, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt." *Id*. §§ 1692c(a)-(b), 1692e, 1692g. If communications are not "in connection with the collection of any debt," then the FDCPA does not apply. *See Bailey v. Security Nat. Servicing Corp*., 154 F.3d 384, 388 (7th Cir. 1989).

The FDCPA does not define the phrase "in connection with collection of any debt."  Whether a communication from a debt collector was made "in connection with the collection of any debt" is a "question of objective fact, to be proven like any other fact." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009).  Because this area of law is highly fact-specific, the court will provide a brief synopsis of the key cases in this area before addressing the merits of the motion.

In *Gburek v. Litton Loan Servicing LP* – a case principally relied on by Plaintiffs – the Seventh Circuit examined three separate communications concerning a borrower who had defaulted on her mortgage loan.  614 F.3d 380 (7th Cir. 2010).  Two of these communications involved letters to the borrower from (1) the loan servicer and (2) a firm representing the loan servicer.  *Id*. at 383.  Although the communications did not contain any specific demands for payment, the Court held that this was just one of several factors that "come[s] into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."  *Id*. at 385.  The Court held that the letter between the loan servicer and borrower fell within the scope of the FDCPA because it offered to discuss "foreclosure alternatives" and asked for financial information to initiate the process.  *Id*. at 386.  To that end, the Court found this opened up communications as to the defaulted loan, and thus, it was an offer to discuss repayment options, qualifying it as an attempt to collect a debt.  *Id*.  Similarly, the Court held that the letter between the debt collector's agent and the borrower was within the scope of the statute because the purpose of the letter was to induce the debtor to settle a debt.  *Id*.

6

In *Ruth*, the Seventh Circuit examined a privacy notice which a debt collector sent to a debtor along with a collection letter.  577 F.3d 790.  Though the parties agreed that the collection letter fell within the ambit of the FDCPA, the debt collector argued the privacy notice should be outside the scope.  *Id*. at 798-99.  The Court rejected this argument on two grounds: (1) the privacy notice was in the same envelope as the collection letter, which constituted an attempt to collect a debt; and (2) the only relationship between the parties arose out of the defaulted debt, so the materials would not have been sent unless defendants had been attempting to collect a debt.  *Id*.

In *Bailey*, a loan servicer sent the borrower a letter listing the next four payments due per the debtor's forbearance agreement.  154 F.3d at 386.  The letter also expressed a desire to "work with" the debtor in making payments, but warned that failure to send full payment may render the forbearance agreement null and void and thus requiring immediate payment in full.  *Id*.  The Seventh Circuit held this did not qualify as a communication in connection with a debt because it "does not 'demand' any payment whatsoever, but merely informs the Baileys about 'the current status' of their account." *Id*. at 388-89.  Moreover, the Court noted that all the due dates were prospective and nothing under the forbearance agreement was overdue.  *Id*. at 389.

Lastly, Defendants heavily rely on *Thompson v. BAC Home Loans Servicing, L.P*., No. 2:09-cv-311, 2010 WL 1286747 (N.D. Ind. 2010).  This case is most analogous to the communication at issue here.  There, defendant acquired plaintiff's home mortgage loan from the previous servicer and sent plaintiff a notice of this transfer ("Notice").  *Id*. at *3.  This six-page Notice informed plaintiff that the servicing of the loan was being

transferred to defendant and that the law required notice of this transfer.  *Id*.  The Notice also provided the payment remittance address of the defendant, payment instructions, a payment coupon with the amount due, and information about optional insurance.  *Id*.  On the bottom of the first page, the Notice stated "this communication is from a debt collector attempting to collect a debt," but later stated that the purpose of the Notice was to advise of the servicing transfer and was an "informational statement *only*."  *Id*. (emphasis in original).  The court noted the Notice did not mention default, delinquency, or foreclosure and thus concluded there was "no indication that the Defendants [were] undertaking collection efforts for missing or late payments.  Rather, they [were] providing information about the new servicer, including its payment remittance address, so that the consumer [could] avoid missing payments or making late payments – which might necessitate the sending of a real dun."  *Id*. at *4.  Put another way, the court stated the materials "would demonstrate to the objective recipient that the Defendant was not taking any position regarding the different scenarios that could apply to the status of the Plaintiff's loan."  *Id*.

Within this framework, the court now looks at the Letter at issue here.  The Seventh Circuit has set forth factors to consider in making this "commonsense inquiry": (1) the absence of a demand for payment; (2) the nature of the parties' relationship; and (3) the purpose and context of the communications, viewed objectively.  *Gburek*, 614 F.3d at 385.

### a. Demand for Payment

Plaintiffs and Ocwen dispute whether a demand for payment has been made here. Plaintiffs argue that because the due date occurred almost seventeen months prior to the date of the Letter, this implied that a payment was due immediately. Moreover, Plaintiffs point to the notice on the second page which states, "This is an attempt to collect a debt and any information obtained will be used for that purpose." Ocwen, on the other hand, argues that the lack of either an amount due or a demand within the text of the letter for any payment due favors a finding that no demand existed.

As an initial matter, the Notice Regarding Debt Collection on the second page of the Letter is not controlling. First, a disclaimer identifying a communication as an attempt to collect a debt "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance." *Gburek*, 614 F.3d at 386 n.3 (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998)); *see also Thompson*, 2010 WL 1286747, at *5 (finding the inclusion of a FDCPA debt collection disclaimer in the letter "did not alter the nature of the communication or the information provided in the letter"); *Gillespie v. Chase Home Fin., LLC*, No. 3:09-cv-191-TS, 2009 WL 4061428, at *6 (N.D. Ind. Nov. 20, 2009) (same). Second, the Notice Regarding Bankruptcy amends this very language, stating, "If you are a debtor in an active bankruptcy case, this letter is not an attempt to collect either a pre-petition, post-petition, or discharged debt." Thus, at best, these two notices cancel each other out as to their significance in attempting to collect a debt.

9

Next, Plaintiffs' reliance on a payment due date in the past cannot alone be sufficient to transform a letter informing the borrower of a service transfer into a demand for payment. Indeed, if this alone were sufficient, it would create the oddity of these letters only being under the scope of the FDCPA when the borrower was late on her payments. To be sure, *Bailey* considered the listing of prospective due dates a factor in finding no demand in place. 154 F.3d at 389. The inverse of this, without any support in the text of the letter or otherwise, should not alter the nature of the communication. *See Thompson*, 2010 WL 1286747, at *4 (finding the fact that mortgage at issue was in default unlike *Bailey* did not change the nature of communication into one that was in connection with the collection of a debt). The Letter informs the borrower a new party is servicing the loan; the happenstance that Plaintiffs' next payment due occurred in the past should not transform this into a demand for payment.

But most importantly, it is axiomatic that for a demand of money to be made, the recipient of the demand must be informed what amount is owed. At no point in the text of the Letter does Ocwen discuss payment options; rather, it only provides where future payments should be sent and how they will be processed. There is no mention of default, delinquency, or foreclosure. Even when viewing the Letter with all reasonable inferences in the Plaintiffs' favor, the court does not find that a demand for payment has been made here.

Of course, the absence of a demand for payment is only one factor examined here. *See Gburek*, 614 F.3d at 385. Indeed, "a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." *Id.*

10

Thus, the court now examines the other factors to determine if the Letter induces a debtor to settle her debt.

### b.  Nature of Parties' Relationship

The Seventh Circuit has examined the nature of the parties' relationship in several cases.  In *Ruth*, the Court found it important that the "only relationship the defendants had with the plaintiffs arose out of [defendants'] ownership of the plaintiffs' defaulted debt."  577 F.3d at 799.  As a result, the Court held the communications fell under the FDCPA because defendants would not have otherwise sent plaintiffs those materials unless it was attempting to collect a debt.  *Id*.  Similarly, in *Gburek*, the debtor was in default on her mortgage claim, a factor the Court found supported holding that the communication attempted to collect a debt.  614 F.3d at 386.  Conversely, in *Bailey*, the Court found that the communications at issue were not under the ambit of the Act, because, among other things, the parties had a relationship under a superseding forbearance agreement in addition to the original defaulted note.  154 F.3d at 388-89.

Here, the parties did not have any relationship prior to the Letter.  In fact, that is the very purpose of the letter – to alert Plaintiffs of Ocwen's new role in their mortgage. Based on Ocwen's description of its new relationship with Plaintiffs and explanation of how future transactions would transpire, it is not apparent that Ocwen is attempting to collect a debt; rather, Ocwen is introducing itself and providing information of how the relationship should be handled *in the future*, not about how the mortgage was handled in the past.  Thus, this factor supports a conclusion that Ocwen's letter was not a communication in connection with the collection of any debt.

11

### c. Purpose and Context of Communications

Ocwen contends that the Letter was sent pursuant to its obligations under RESPA. *See* 12 U.S.C. § 2605(c)(1) ("Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."); *compare with Thompson*, 2010 WL 1286747, at *3 (where defendants stated the transfer notice was sent pursuant to obligations under RESPA). The debt collector's subjective purpose of the communication, however, does not control this issue. *See Ruth*, 577 F.3d at 798 (finding that a reasonable person would conclude that privacy notice was sent in attempt to collect a debt even though debt collector claimed it sent the notice solely to comply with obligations of a federal statute). Rather, the purpose and context of the communications should be viewed objectively. *Id*.

When viewed objectively, the Letter is most similar to the communications in *Thompson* and *Bailey*. As in *Bailey*, the Letter does not demand anything; rather, it informs Plaintiffs about the status of their account. Just as plaintiffs in *Bailey* were updated as to the prospective due dates for their forbearance agreement, so too here Plaintiffs are notified as to the contact information of the new loan servicer. Similarly, *Thompson* provides an almost identical letter to the one at issue here. To be sure, minor discrepancies exist, such as *Thompson's* Notice not containing a due date and including the phrase that it was an "informational statement *only*." *Thompson*, 2010 WL 1286747, at *3-4. But these are minor and do not differentiate it from the same purpose as the Letter here: that is, to provide information to the borrower.

12

Plaintiffs nonetheless argue that *Gburek* controls here, but they miss the mark, as communications in *Gburek* are in sharp contrast to the communication here.  *Gburek* went beyond informing plaintiff of the status of her loan – it offered "foreclosure alternatives" and sought financial information to start that process.  614 F.3d at 386.  The Letter neither mentioned foreclosure or delinquency of the debt, nor discussed any repayment options for the debt.  Indeed, without a payment demand of any kind, Plaintiffs would have no idea what payment would even be required.  Thus, *Gburek* is not on point here.

In light of the factors discussed above, the court concludes that the Letter is not a communication in connection with debt collection under the FDCPA.  On its face, it is clearly informational – it alerts Plaintiffs that their account has been transferred to Ocwen and provides Ocwen's contact information.  The Letter did not demand a specific payment or discuss the delinquency of the underlying debt.  Although it does include the principal amount of the loan and notes a prior date for payment due, a reasonable person would not believe the Letter was a debt collection demand when the terms of the payment are not even listed.  This does not constitute the "abusive debt practices" the FDCPA was created to prevent.  Indeed, if this communication were sufficient to fall under the FDCPA, then it would open the floodgates for litigation even more in an area of the law already susceptible to abuse.  *See Bailey*, 154 F.3d at 388 (stating that the FDCPA "can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme").  Accordingly, the Letter was not a

13

communication that triggered the requirements of the FDCPA, and as a result Counts I, III, and IV are dismissed.[1]

### 2. Notice of Ceasing Communication

Count II does not require the communication be "in connection with the collection of a debt"; thus, the court must still assess the sufficiency of this claim.  Section 1692c(c) of the FDCPA states, in pertinent part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . .

15 U.S.C. § 1692c(c).

Plaintiffs allege that "the bankruptcy and the notice issued by that court told [Ocwen] to cease communications and cease collections."  (Compl. ¶ 20).  As a result, Plaintiffs contend that when Ocwen continued to communicate with Plaintiffs it violated § 1692c(c).  (*Id.*).  Defendants counter that the bankruptcy notice is not sufficient as it is neither from Plaintiffs nor about ceasing communications, as required by the statute.

When interpreting a statute, the court must determine if the language Congress wrote resolves the issue.  *Bailey*, 154 F.3d at 387.  That is, "[w]here the statute's language is plain, the court's function is to enforce it according to its terms."  *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997).  A simple reading of the statute makes it clear that Plaintiffs have not stated a claim here.

---

[1] Because the court has dismissed Count IV, it is not necessary to address Ocwen's alternative argument for dismissing this claim.

First, the plain language of § 1692c(c) states that it must be a *consumer* who notifies the debt collector.  A consumer is defined under the FDCPA to include the "consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."  15 U.S.C. § 1692c(d).  Plaintiffs do not allege that they or anyone within this definition ever sent written notice to Ocwen.  Instead, Plaintiffs rely on a notice issued by a bankruptcy court, which, by the plain language of the statute, is not sufficient to provide notice.

Further, Plaintiffs have not even alleged that Ocwen had any knowledge of the bankruptcy notice.  Ocwen has not filed an appearance in Plaintiffs' bankruptcy, nor have Plaintiffs alleged that Ocwen received any type of notice from the bankruptcy court.  Indeed, the bankruptcy court sent this notice to the prior servicer of the account (GMAC) approximately fifteen months prior to Ocwen even becoming Plaintiffs' servicer.  (*See* Compl. ¶¶ 9-10).  The FDCPA does not place the burden on a debt collector to scour the public record to decode whether a consumer wishes to cease communications; rather, the consumer has the duty to notify the debt collector of her wishes.  That did not happen here.

Lastly, the notification must state that the consumer refuses to pay the debt or wishes to cease further communications with the debt collector.  The bankruptcy notice does neither.  Though it states certain actions creditors *may* not take, such as demanding repayment or taking actions to collect money from the debtor, it does not provide a firm prohibition against these activities.  (Compl., Ex. E).  Instead, the text is couched in ambiguity, stating that "*in most instances*, the filing of the bankruptcy case automatically

stays certain collection . . . against the debtor" and "*under certain circumstances*, the stay may be limited to 30 days *or not exist at all* . . . ."  (*Id*.) (emphasis added).  Neither of these satisfy the notice required under § 1692c(c).

Plaintiffs nonetheless argue that any notice provided to GMAC is imputed on Ocwen and the bankruptcy notice satisfies § 1692c(c) of the FDCPA.  Plaintiffs, however, fail to cite any authority for either proposition.  *But see Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files"); *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 81 (N.D.N.Y. 2001) (dismissing claim under § 1692c(c) where plaintiff failed to allege that he ever communicated with defendant regarding the debt or that he ever requested that defendant not communicate with him but instead only alleged communication with a third party).  This is not sufficient to survive a motion to dismiss. *See Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir. 1988) ("It is not the obligation of the court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").  Accordingly, Count II should be dismissed.[2]

---

[2] Defendants also argue that Count III should be dismissed on a similar theory.  But it is not necessary to address this argument since the claim has been dismissed on other grounds.

## IV.    Conclusion

For the reasons set forth above, Ocwen's motion to dismiss (Docket # 13) is

**GRANTED**.

**SO ORDERED** this 28th day of August 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.